UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-00028-RJC-DSC

| TOM LAMB, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| LOWE'S COMPANIES, INC., A/K/A LOWE'S HOME IMPROVEMENT, LLC, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Tom Lamb's ("Plaintiff's") Complaint, (Doc. No. 1); Lowe's Companies, Inc.'s ("Defendant's") Motion to Dismiss, (Doc. No. 10); and Defendant's Memorandum in Support (Doc. No. 10-1). Plaintiff did not file a response to the Motion. Defendant argues that Plaintiff failed to state a claim upon which relief can be granted with respect to the right of association and intentional infliction of emotional distress causes of action. For the reasons set forth below, Defendant's Motion dismissing Plaintiff's fourth and sixth causes of action, is **GRANTED**.

I. BACKGROUND

A. Procedural Background

In late 2015 or early 2016, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that he experienced discrimination based on his age, race, and religion, and that his employment was terminated in retaliation for complaining about such

discrimination. (Doc. No. 1 at 5). On or about November 11, 2016, the EEOC issued to Plaintiff a Notice of Right to Sue, advising him of his right to sue within ninety days. (Id.).

On February 7, 2017, Plaintiff commenced this suit, alleging the following causes of action: (1) age discrimination; (2) religious discrimination; (3) discriminatory harassment; (4) violation of right of association; (5) retaliatory termination; and (6) intentional infliction of emotional distress. (Id. at 1–11). On May 22, 2017, Defendant filed a Motion to Dismiss under Rule 12(b)(6), for failure to state a claim with respect to Plaintiff's causes of action for the right of association and intentional infliction of emotional distress. (Doc. No. 10 at p. 1). Plaintiff did not file a response to the Motion to Dismiss.

B. Factual Background

Plaintiff is a fifty-one year old Caucasian male and a resident of Charlotte, North Carolina. (Doc. No. 1 at 2). Defendant is a corporation engaged in the retail sale of home improvement and construction products, and has its principal place of business in Mooresville, North Carolina. (Id.). From March 1999 to November 2015, Plaintiff was employed by Defendant in various marketing positions. (Id. at 2–3). At the time of his termination, Plaintiff held the position of Chief Marketing Officer. (Id. at 3).

In 2012, Defendant hired Mike Jones, an African-American male, for the position of Chief Merchandising Officer. (Id.). In 2014, Jones was promoted to Chief Customer Officer, a position to which the Chief Marketing Officer reported. (Id.). In

the course of supervising Plaintiff, Jones regularly made comments to Plaintiff that were antagonistic to Plaintiff's age, race, and religion. (Id.). With respect to age, Jones told Plaintiff that he was "the old guard" and disconnected. (Id.). Jones also told Plaintiff to hire younger employees so as to better appeal to younger customers and instructed Plaintiff to encourage an employee in her fifties to retire. (Id.). With respect to race, Jones told Plaintiff that Defendant needed to appeal to Hispanics and African Americans, that Jones's family and friends thought of Defendant as "country and redneck," and that Defendant overly focused on people like Plaintiff. (Id. at p. 4). With respect to religion, Jones said Plaintiff and others deferred much to the "religious Christian right" and made hostile comments about Plaintiff's association with, and support of, the American Family Association. (Id.).

On several occasions, Plaintiff requested a meeting with Defendant's Chairman and Chief Executive Officer, to address the problems with Jones, but was repeatedly thwarted by Jones. (Id. at 5). On November 19, 2015, Defendant abruptly terminated Plaintiff's employment. (Id.). These are the facts alleged by Plaintiff viewed in a light most favorable to him.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy the Rule 8

requirement, the showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." Id.

Although the Court must consider all well-pled allegations in the complaint as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and must construe all factual allegations in the light most favorable to the plaintiff, Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Although the court cannot weigh the facts or assess the evidence at this stage, a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014).

### III. DISCUSSION

Defendant has moved to dismiss Plaintiff's fourth and sixth causes of action alleging a violation of the right of association and intentional infliction of emotional distress.

A. <u>Plaintiff Does Not Properly Allege a Violation of His First Amendment Right of Association.</u>

Plaintiff's Complaint alleges that Defendant violated his First Amendment right of association, given Jones's repeated hostile comments to Plaintiff about Plaintiff's association with, and support of, the American Family Association. (Doc. No. 1 at 4, 9–10). The American Family Association is a conservative, Christian 501(c)(3) non-profit organization that seeks to "strengthen the moral foundations of American culture." See *Our Mission*, AMERICAN FAMILY ASSOCIATION (Feb. 14, 2017, 9:07 AM), https://www.afa.net/who-we-are/our-mission/.

"It is well-established that the freedom to engage in association for the advancement of beliefs and ideas is a right guaranteed by the First Amendment." <u>Hole v. N.C. Bd. of Elections</u>, 112 F. Supp. 2d 475, 479 (M.D.N.C. 2000) (citing <u>Healy v. James</u>, 408 U.S. 169, 181 (1972)). Although the right or freedom of association is not explicitly set out in the First Amendment, the Supreme Court has held it to be implicit in the freedoms of speech, assembly, and petition. <u>Tashjian v. Republican Party of Connecticut</u>, 479 U.S. 208, 214 (1986). But in the absence of state action, claims against private parties based upon alleged violations of constitutional protections will not stand under the United States Constitution. <u>Sesco v. Dana World Trade Corp.</u>, 2002 U.S. Dist. LEXIS 3072, at *18 (W.D.N.C. Feb. 7, 2002).

Plaintiff's First Amendment rights are not implicated here because the United States Constitution does not secure rights to individuals against other private parties. See <u>Pub. Utils. Comm'n v. Pollak</u>, 343 U.S. 451, 461 (1952); <u>Roden v. Diah</u>, Civil Action No. 7:07-CV-00252, 2008 U.S. Dist. LEXIS 102828, at *31–35 (W.D. Va.

Dec. 19, 2008); Johnson v. Mayo Yarns, Inc., 484 S.E.2d 840, 844 (N.C. App. 1997) (Greene, J., concurring).  Accordingly, Plaintiff has failed to state a claim for violation of his right of association under the First Amendment to the United States Constitution and the Court grants the Motion to Dismiss as to the sixth cause of action.

  B. Plaintiff Does Not Properly Allege Intentional Infliction of Emotional Distress.

Plaintiff's Complaint also includes a state claim for intentional infliction of emotional distress ("IIED") and alleges that Defendant engaged in extreme and outrageous conduct intended to cause Plaintiff severe mental and emotional distress. (Doc. No. 1 at 11–12).  Defendant, however, contends that Plaintiff's IIED claim fails because Plaintiff failed to allege both "extreme and outrageous conduct" and "severe emotional distress."  (Doc. No. 10-1 at 8–9).

To state a claim for intentional infliction of emotional distress in North Carolina, a plaintiff must show (1) extreme and outrageous conduct (2) intended to cause severe emotional distress (3) that did indeed cause severe emotional distress. Holloway v. Wachovia Bank & Trust Co., 452 S.E.2d 233, 240 (N.C. 1994).  Whether conduct is sufficiently extreme and outrageous is a question of law.  Simmons v. Chemol Corp., 528 S.E.2d 368, 372 (N.C. App. 2000).  "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Smith-Price v. Charter Behavioral Health Sys., 595 S.E.2d 778, 782 (N.C. App. 2004) (internal quotation marks and citations

omitted). The complained-of conduct must be more than "mere insults, indignities, [or] threats." Wagoner v. Elkin City Schs.' Bd. of Educ., 440 S.E.2d 119, 123 (N.C. App. 1994) (internal quotation marks and citation omitted). The term "'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992) (quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990)).

In the employment context, North Carolina courts will rarely find that conduct rises to the level of extremeness and outrageousness necessary to support an IIED claim. Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C., 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002). Successful IIED claims in this area are typically characterized by "sexual advances, obscene language, and inappropriate touching." Gauthier v. Shaw Grp., Inc., 2012 U.S. Dist. LEXIS 172551 at *8 (W.D.N.C. 2012) (quoting Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008)).

Upon review of Plaintiff's Complaint, the Court concludes that Plaintiff has failed to sufficiently allege an IIED claim. In the Complaint, Plaintiff states that his supervisor regularly made ageist, racist, and anti-religious comments to Plaintiff. (Doc. No. 1 at 3–5). Plaintiff alleges, for example, that his supervisor told him that Plaintiff's advanced age was impeding Plaintiff's ability to market and advertise Defendant to customers, that Defendant should appeal more to certain racial groups,

and that too much deference was afforded to the "religious Christian right." (Id. at 3–4). These comments, however, as well as others referenced in Plaintiff's Complaint, do not rise to the level of extremeness and outrageousness necessary to support an IIED claim. See, e.g., Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799 (M.D.N.C. 1999) (refusing to find conduct extreme and outrageous when employer told plaintiff he was too old and sick and needed to retire); Guthrie v. Conroy, 567 S.E.2d 403 (N.C. App. 2002) (refusing to find conduct extreme and outrageous when coworker rubbed plaintiff's neck and shoulders, placed a lampshade on her head when she fell asleep, threw potting soil and water at her while she was planting flowers at work, and placed objects between the legs of a statuette and asked her how she liked the statuette with the appended objects); Stamper v. Charlotte-Mecklenburg Bd. of Educ., 544 S.E.2d 818 (N.C. App. 2001) (refusing to find conduct extreme and outrageous when assistant principal interfered with plaintiff-teacher's classroom instruction, falsified her students' test scores and publicized them to her fellow teachers, and transferred her to an inconvenient school); Cf. Cagle v. Marriott/Guilford Coll./Marriott Claims, 721 S.E.2d 764 (N.C. App. 2012) (finding conduct extreme and outrageous when supervisor made sexually suggestive comments to plaintiff, touched her inappropriately several times a day, and ordered her to inappropriately touch him after coaxing her to a private back room); Sisk v. Tar Heel Capital Corp., 603 S.E.2d 564 (N.C. App. 2004) (finding conduct extreme and outrageous when manager made sexually suggestive comments and touched plaintiff inappropriately); Brown v. Burlington Indus., Inc., 378 S.E.2d 232 (N.C. App.

1989) (finding conduct extreme and outrageous when manager made sexually explicit remarks and gestures to plaintiff on an ongoing basis); Hogan v. Forsyth Country Club Co., 340 S.E.2d 116 (N.C. App. 1986) (finding conduct extreme and outrageous when supervisor engaged in unwanted sexual touching of plaintiff, screamed profanities at her when she rejected his sexual advances, threatened her with bodily injury, and advanced toward her with a knife and slammed it down on a table in front of her). The conduct described in Plaintiff's Complaint is not "so severe that no reasonable man could be expected to endure it," and thus does not rise to the level of extremeness and outrageousness necessary to support an IIED claim. See Waddle, 414 S.E.2d at 27–28 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).

Moreover, Plaintiff's Complaint is without any factual allegations showing that Plaintiff suffered severe emotional distress. Plaintiff merely alleges that Defendant caused Plaintiff severe emotional distress, and fails to identify any emotional or mental disorder. There are no indications that Plaintiff sought medical treatment or that Plaintiff exhibited any specific symptoms. There are no factual allegations about the severity of Plaintiff's emotional distress. Plaintiff's allegation that he suffered severe emotional distress, without more, is a legal conclusion couched as a factual allegation and the Court is not bound to accept it as true. See, e.g., McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 980 (M.D.N.C. 2011) (concluding that plaintiffs failed to state a claim for IIED because they "failed to include any factual allegations as to [their] emotional or mental disorders, condition, or diagnosis"); Horne v. Cumberland County Hosp. Sys., 746 S.E.2d 13, 20 (N.C. App. 2013) (concluding that

plaintiff failed to state a claim for IIED because she failed include any "factual allegations regarding the type, manner, or degree of severe emotional distress"); Holleman v. Aiken, 668 S.E.2d 579, 590 (N.C. App. 2008) (concluding that plaintiff failed to state a claim for IIED because she "failed to make any specific allegations as [to] the nature of her 'severe emotional distress.'"). Accordingly, Plaintiff has failed to state a claim for intentional infliction of emotional distress and the Court grants the Motion to Dismiss as to the sixth cause of action.

## IV. CONCLUSION

Plaintiff has failed to state a claim upon which relief can be granted with respect to the right of association and intentional infliction of emotional distress causes of action. Plaintiff's fourth and sixth causes of action would not survive a motion to dismiss even if Plaintiff were permitted to amend his complaint, and accordingly any amendment would be futile. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995) (holding that if an amended complaint could not withstand a motion to dismiss, the motion to amend should be denied as futile).

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss as to Plaintiff's fourth and sixth causes of action, (Doc. No. 10), is **GRANTED**.

Signed: March 7, 2018

Robert J. Conrad, Jr.
United States District Judge